[Civ. No. 24395. Second Dist., Div. Three. Oct. 18, 1960.]

TOKUZO SHIDA, Appellant, v. JAPAN FOOD CORPORA-
TION (a Corporation) et al., Respondents.

Wolver & Wolver and Eugene L. Wolver for Appellant.

Mas Yonemura and James K. Mitsumori for Respondents.

VALLÉE, J.—Appeal from an order changing the place of trial from the county of Los Angeles to the city and county of San Francisco.

The defendants are Japan Food Corporation, a California corporation, with its principal place of business in the city and county of San Francisco; Waimanalo Ko-Ko Company, a partnership, the partners being Richard K. Kiyota, James M. Kiyota, David M. Kiyota, and Kiyono Kiyota; Richard Kiyota; and H. Kiyota. The partners and the individual defendants are all residents of the State of Hawaii. The order was made on motion of Japan Food Corporation, which was the only defendant that had appeared in the action.

The verified complaint is in two counts. The first count, in substance, alleges: Plaintiff is an individual doing business under a fictitious firm name; Waimanalo Ko-Ko Company is a Hawaiian corporation or partnership (we shall refer to it as the partnership); the partnership and the two individual defendants agreed if plaintiff would at his own expense and effort create a market for their products, they would from year to year grant to him the exclusive right to distribute their products in the United States; shortly thereafter, on February 11, 1952, they executed and delivered to plaintiff an agreement giving him the exclusive right from 1952 to

1955, copy of which is incorporated in the complaint as an exhibit and set out in the footnote;[1] written extensions were executed and delivered to plaintiff for each subsequent year from 1953 through January 28, 1959, in consideration of the exclusive right of distribution "on the mainland and particularly in California"; plaintiff ordered and undertook to distribute and make known all the products, previously unknown on the mainland, particularly the pickled products, and did order and distribute increasing quantities up to and including January 28, 1959;[2] for some time prior to that date and thereafter plaintiff had not received the products in the quantities ordered, did not receive a renewal of the annual agreement after repeated inquiries, and was notified about February 11, 1959, in writing the contract would not be renewed. It is alleged this communication was a breach of local usage and custom incident to the "Law Merchant."

The first count also alleges: Plaintiff's orders had not been filled due to the fact, unknown to plaintiff, that the corporate defendant had solicited the partnership to breach the contract which he could reasonably expect and rely on being renewed by usage and custom; the partnership failed and refused to perform solely and proximately by reason of the interference

---

[1] "February 11, 1952
Box 31
Waimanalo, Oahu

"WE HEREBY AGREE TO GIVE STAR RICE COMPANY OF 204 SO. SAN PEDRO ST, LOS ANGELES, CALIFORNIA THE EXCLUSIVE RIGHTS OF DISTRIBUTING THE WAIMANALO KO-KO PICKLED TURNIPS ON THE MAINLAND FROM FEBRUARY 11, 1952, TO FEBRUARY 11, 1955.

"WAIMANALO KO-KO CO.
/s/ RICHARD K. KIYOTA"

[2] The extension of January 28, 1958 is attached to the complaint as an exhibit and reads:

"WAIMANALO KO-KO COMPANY
P. O. Box 1315
HILO, HAWAII, T. H.
PHONE 54659

"Jan. 28, 1958

"The Waimanalo Ko-Ko Co. gives Star Rice Co. the exclusive right to distribute the Ko-Ko brand Pickled Radish on the mainland from Jan 28, 1958 to Jan. 28, 1959.

"Waimanalo Ko-Ko Co.
/s/ R. KIYOTA
R. Kiyota"

It will be observed that the document of February 11, 1952 gives the right to distribute "PICKLED TURNIPS" while the one of January 28, 1958 gives the right to distribute "Pickled Radish."

The extensions alleged to have been granted between February 11, 1952, and January 28, 1958, are not set out in the complaint.

of the corporate defendant, which culminated in the abandonment of the contract by the partnership, although it would otherwise have been performed by it; unless the corporate defendant is enjoined from receiving the products, plaintiff's business, good will and trade name will be irreparably injured; the amount of damage is difficult to ascertain and plaintiff cannot be adequately compensated by a monetary judgment since other products sold by plaintiff for many past years will be adversely affected.

The second count incorporates the allegations of the first count through the alleged breach. It then alleges a controversy between plaintiff and defendants in respect to the contractual rights and duties, particularly in respect to the obligation of the noncorporate defendants under the ''Law Merchant.'' It also appears to allege a controversy between the corporate defendant and the other defendants in respect to the rights of plaintiff.

Plaintiff prays judgment against defendants and each of them, declaring he is entitled to the exclusive right to sell the products on the mainland for the usual period conforming with local customs, usage, and the ''Law Merchant,'' $6,000 damages and $500 each month the products are diverted to the corporate defendant or until they are properly channeled to plaintiff.

In support of the motion the corporate defendant filed a declaration of its executive vice-president and general manager that its principal place of business is in the city and county of San Francisco, an affidavit of the managing partner of Waimanalo Ko-Ko Company, and a declaration of merits, the sufficiency of which is not in question.

The affidavit of the managing partner of Waimanalo Ko-Ko Company states: Waimanalo Company is a partnership composed of individuals residing in Hawaii; the partnership has never maintained an office, telephone listing or sales agents, employees or representatives in California at any time; the other defendants are individuals residing in Hawaii.

The affidavit further states: 1. The contract, or contracts, and all other agreements made between the partnership or any of its individual partners and plaintiff were in fact entered into, consummated, concluded and to be performed in Hawaii, in that (a) the original agreement was signed, dated and posted by affiant at Waimanalo, Island of Oahu, state of Hawaii; (b) each successive yearly extension consisted of letters signed by affiant on behalf of the partnership, dated

and posted in Hawaii; (c) all sales to plaintiff were in fact, by custom and agreement, made f.o.b. Hilo, Hawaii, and title passed to plaintiff on delivery at dockside there; (d) all payments became due and payable at the partnership's principal place of business at Waimanalo, or at Hilo; (e) all purchase orders placed by plaintiff for Ko-Ko brand pickles were subject to acceptance by the partnership at Waimanalo, or at Hilo. 2. Any contracts and all other agreements made between the corporate defendant and the partnership or any individual partner on the obligations of which this action is founded were in fact entered into, consummated, and concluded within the state of Hawaii.

We are concerned only with the rights of the corporate defendant. They are governed by the self-executing provisions of section 16 of article XII of the California Constitution (*Hale* v. *Bohannon*, 38 Cal.2d 458, 470 [241 P.2d 4]; *Blumer* v. *Kirkman Corp.*, 38 Cal.2d 480, 485 [241 P.2d 17]), which states:

"A corporation or association may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated . . . ."

Section 16, article XII, is permissive; it does not prevent a plaintiff from suing or proceeding to trial in any county in the state. (*Rutherford* v. *New York Hanseatic Corp.*, 153 Cal.App.2d 462, 464 [314 P.2d 560].) His choice is regarded as presumptively correct. (*J. C. Millett Co.* v. *Latchford-Marble Glass Co.*, 144 Cal.App.2d 838, 839 [301 P.2d 914].) The constitutional provision applies to actions sounding in tort. (*Searls* v. *Greyhound Corporation*, 180 Cal.App.2d 463, 465 [4 Cal.Rptr. 206].) A corporate defendant has the burden of negating the propriety of venue as laid on *all possible* alternative grounds. (*Kupersmith* v. *San Francisco Shippers, Inc.*, 181 Cal.App.2d 144, 146 [5 Cal.Rptr. 123]; *Shores* v. *Chip Steak Co.*, 130 Cal.App.2d 620, 623 [279 P.2d 591]; *Pacific Bal Industries* v. *Northern Timber, Inc.*, 118 Cal.App.2d 815, 826 [259 P.2d 465], and cases cited therein.) It was incumbent on the corporate defendant to show not only its principal place of business and that no defendant was a resident of the county of Los Angeles, but also that its liability, if any, did not arise in the county of Los Angeles in which venue was originally

laid by the filing of plaintiff's complaint. (*Shores* v. *Chip Steak Co., supra,* 130 Cal.App.2d 620, 623.) ██ If non-residence venue is proper as to a corporate defendant, the corporation has no standing to move for a transfer to its principal place of business; and the fact that individual defendants have been joined in the action does not extend its right of removal. (*Pacific Bal Industries* v. *Northern Timber, Inc.,* 118 Cal.App.2d 815, 826 [259 P.2d 465] ; *Rutherford* v. *New York Hanseatic Corp.,* 153 Cal.App.2d 462, 465 [314 P.2d 560] ; *Strassburger* v. *Santa Fe L. I. Co.,* 54 Cal.App. 7, 10 [200 P. 1065].)

Since the county of Los Angeles is presumptively the proper county for trial of the action and it is undisputed that the complaint alleges, at least sufficiently for the purpose of determining venue, a cause of action against the corporate defendant in tort for wrongfully inducing a breach of contract, the question is: Did the corporate defendant make any showing that the liability did not arise in the county of Los Angeles? ██ The liability arises where the injury occurs. (*Tingley* v. *Times-Mirror Co.,* 144 Cal. 205, 206 [77 P. 918].) ██ The word injury "means a wrongful invasion of legal rights." (*People* v. *Hess,* 107 Cal.App.2d 407, 424 [237 P.2d 568] ; *Roth* v. *Cottrell,* 112 Cal.App.2d 621, 624-625 [246 P.2d 958].)

██ The only statement in the record in support of the motion which could possibly relate to where the corporate defendant's liability arose is this:

"That any contracts and all other agreements, oral or written, made between defendant Japan Food Corporation, and the said partnership, or any individual defendant partners thereof, upon the obligation or obligations of which this action is founded, were in fact entered into, consummated and concluded within the State of Hawaii";

The statement was apparently intended to controvert the presumption in favor of plaintiff that the liability for the alleged tort of inducing breach of contract arose in the county of Los Angeles. It shows no facts indicating the inducement or the injury did not occur in the county of Los Angeles. It merely says that any agreements between the corporate defendant and the other defendants were made in Hawaii.

██ An agreement between one inducing breach of contract and one who breaches a contract is not an element of the tort alleged against the corporate defendant, and no allegation of an agreement or conspiracy is found in the complaint. (See 2 Witkin, California Procedure, 1362, and Supplement, 1959,

p. 51, and 2 Witkin, Summary of California Law, 1331-1332 and cases cited therein for elements of the action.)

 The corporate defendant urges that in the absence of any affirmative showing to the contrary, its liability and the injury resulting therefrom must have occurred, if at all, at its place of business in San Francisco or in Hawaii where the other defendants reside and have their principal place of business. As we have stated, that is not the law as to a corporate defendant where the complaint is silent. The affidavit fails to show that injury did not occur in the county of Los Angeles. For all that was shown in support of the motion, the injury to plaintiff may have resulted in his inability to sell or contract for the sale of the products in the county of Los Angeles. The question raised in the briefs as to whether the liability arises where the inducement takes place or where the injury occurs to plaintiff is immaterial inasmuch as there is nothing in the affidavit to rebut the presumption that liability arose where the suit was brought.

In view of our conclusion that the moving defendant failed to carry the burden of establishing that the liability did not arise in the county of Los Angeles, the order granting the motion for a change of venue must be reversed.

Reversed.

Shinn, P. J., and Ford, J., concurred.